# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JAMES BELLANCA and MICHAEL FINK, Ohio citizens, individually and as the representatives of a class of similarly-situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> THE LIFETIME VALUE CO. LLC, a Delaware limited liability company, <br><br> Defendant. | Case No.: <br><br> Class Action |

## CLASS ACTION COMPLAINT

Plaintiffs, James Bellanca ("Bellanca") and Michael Fink ("Fink") (collectively, "Plaintiffs"), bring this action on behalf of themselves and all other persons similarly situated, through their attorneys, and allege the following against Defendant The Lifetime Value Co. LLC ("Lifetime" or "Defendant"):

## NATURE OF ACTION

1. Plaintiffs and members of the proposed class (the "Class" or "Class Members") seek statutory damages, an injunction, and other relief from Lifetime for violations of the Ohio Right of Publicity Statute ("ORPS"), Ohio Revised Code § 2741.01, *et seq.*, and Ohio common law.

2. ORPS prohibits using an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance for commercial purposes without prior written consent. OH ST § 2741.02. Ohio common law also precludes the commercialization of an individual's name or likeness through the tort of misappropriation. *James v. Bob Ross Buick, Inc.*, 167 Ohio App. 3d 338, 342 (2006) (citing *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224,

229-30 (1976) (adopting definition of the tort of misappropriation as set forth in the Restatement of Torts 2d, Section 652C)).

3. Lifetime is a tech company that builds web and app products. One such product is an internet-based search platform called PeopleSmart.

4. PeopleSmart enables users to conduct people searches in order to find up-to-date contact information quickly. Visitors to PeopleSmart are able to search for individuals by name, employer, job title, email addresses, phone numbers, or usernames. Results of these searches generate reports on individuals matching criteria of the searches and include such information as full names, place of work, educational background, email addresses, telephone numbers, and social media accounts. These reports enable users to accurately identify an individual.

5. To view these reports, a user must enter into a paid-for seven-day trial of PeopleSmart, which converts to a monthly subscription unless cancelled. The purpose of the seven-day trial, along with the limited access to the reports generated on the website during the trial, is to familiarize the user to the platform and entice that user to enter into a monthly subscription plan for continued use of the platform.

6. Plaintiffs and the Class do not subscribe to nor use PeopleSmart. More importantly, Plaintiffs and the Class never provided Lifetime with written consent to use their names, identities, and other personal information contained in the reports generated by PeopleSmart to advertise subscriptions for the PeopleSmart platform.

7. Despite failing to obtain written consent from Plaintiffs and the Class, Lifetime nevertheless utilized their personal identifying information for the purpose of enticing users of its PeopleSmart platform to enter into paid subscriptions for full and continued access to reports generated by the platform. In other words, Lifetime used Plaintiffs' and other Class Members'

identities for commercial purposes without their written permission in violation of ORPS and Ohio common law.

8. Plaintiffs bring this Complaint seeking an order (i) declaring that Lifetime's conduct violates ORPS and common law, (ii) requiring that Lifetime cease the unlawful activities described herein and enjoining Lifetime from committing the unlawful activities in the future, (iii) awarding Plaintiffs and the Class actual damages, including any profits derived from and attributable to the unauthorized use of their names or likenesses, or statutory damages between $2,500 and $10,000 as provided at OH ST § 2741.07(b), and (iv) an award for punitive damages, if warranted, and reasonable attorneys' fees, court costs, and other expenses associated with this action.

**PARTIES**

9. Plaintiff James Bellanca is a citizen of the State of Ohio residing in Cleveland, Ohio.

10. Plaintiff Michael Fink is also a citizen of the State of Ohio residing in Lakewood, Ohio.

11. Defendant Lifetime is a Delaware limited liability company with its principal place of business located in New York City, New York. For its online platform PeopleSmart, Lifetime seeks out and compiles names and other identifying information of Ohio citizens and uses that information to market monthly subscriptions for PeopleSmart to Ohio citizens and others without written consent.

**JURISDICTION AND VENUE**

12. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because diversity of citizenship exists between the parties –

3

Plaintiffs are citizens of Ohio and Lifetime is a limited liability company with its principal place of business in New York. Further, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, with at least 100 or more potential class members based on the number of individuals accessible on Lifetime's PeopleSmart platform and the damages available through ORPS. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13. The Court has personal jurisdiction over Lifetime because it sought out and compiled the names and other identifying information of Plaintiffs and other Ohio citizens and used that information for marketing Ohio citizens and others without written consent. In so doing, Lifetime committed the statutory violations and common law torts related to the matters complained of herein in this District.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## OHIO RIGHT OF PUBLICITY STATUTE

15. ORPS prohibits the use of "any aspect of an individual's persona for a commercial purpose … [without] written consent." OH ST § 2741.02.

16. ORPS defines "persona" as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." OH ST § 2741.01(A). "Commercial purpose" is defined in pertinent part as "the use of or reference to an aspect of an individual's persona …. (2) For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter." OH ST § 2741.01(B).

4

17. A person who violates ORPS is liable in a civil action for actual damages, including any profits derived from and attributable to the unauthorized use of an individual's persona or, at the election of the plaintiff and in lieu of actual damages, statutory damages in the amount of at least $2,500 and not more than $10,000, as determined in the discretion of the trier of fact. OH ST § 2741.07(A)(1)(a) and (b). ORPS further provides that punitive or exemplary damages may be rewarded and authorizes the issuance of injunctive relief where appropriate. OH ST § 2741.07(A)(1)(c) and (D)(3).

18. The remedies provided for in ORPS are not exclusive; rather, they are in addition to any other remedies provided for by state or federal statute or common law. OH ST § 2741.08.

## FACTUAL ALLEGATIONS

19. Lifetime is a tech company that specializes in "creating tools for both consumers and businesses to find and leverage data for a variety of uses."[1] Lifetime touts that it builds "best-in-class web products and apps to put the power of information into the hands of [its] customers." [2]

20. One such product is PeopleSmart, a web-based search engine that helps users "find relevant leads, prospects and customers with up-to-date contact info quickly."[3] PeopleSmart allows users to search through over 100 million business contacts and provides over 100 million direct telephone numbers and email addresses. PeopleSmart is geared towards professionals seeking to grow their businesses through quick and accurate access to contacts for sales, marketing, and recruiting.

---

[1] Information for Lifetime found at its website, www.ltvco.com, last visited on October 1, 2023.

[2] *Id.*

[3] Information regarding PeopleSmart found at www.peoplesmart.com, last visited on October 1, 2023.

21. A visitor to the PeopleSmart website can use the platform to find and filter information about individuals. A prospective customer can perform a person, phone, email, or username search by selecting their desired search type, which is located at the center of the webpage.

22. For example, a prospective customer can enter a person's name on the search tab provided to initiate a search. The customer also has the option to narrow the search by including a company name and state. Once this information is entered, PeopleSmart begins to search its database for matching results. However, prior to revealing the search results, PeopleSmart requires the prospective customer to sign up for a paid for seven-day trial.

23. PeopleSmart offers two types of trials: the "Casual" plan for $1 and the "Plus" plan for $5. Both trials allow the prospective customer to access 50 reports during the seven-day trial period. The main difference between the two is that the Plus plan additionally provides customers with the ability to download reports of searched individuals to a PDF file.

24. After the trial plan is selected, the prospective customer provides payment information, consents to automatic membership renewal, and consents to the Terms of Service and Privacy Policy. Once this is completed, the prospective customer can view the search results that fall within the search parameters and access the reports generated.

25. Reports generated by PeopleSmart reveal basic identifying information of an individual searched, such as the person's full name, place of work and position, state and city, social media, educational and career background, email, and phone number. According to PeopleSmart, the underlying data is updated regularly. Thus, the reports contain enough information to identify a person specifically, even if a search generates more than one report.

26. At the conclusion of the trial period, the prospective customer is automatically

enrolled into a monthly subscription plan. Lifetime offers three types of subscription plans for PeopleSmart: a basic plan for $39 a month; a professional plan for $69 a month; and a business plan for $99 a month. The only difference between the plans is the number of reports that can be accessed during the month.

27. The purpose behind Lifetime's trial of PeopleSmart and limited access to reports generated using the platform during the trial period is singular: to advertise and convince prospective customers to enroll in and ultimately purchase monthly subscriptions for PeopleSmart, whereby the user can guarantee continual access to reports generated by the platform. In other words, Lifetime's use of individuals' identity attributes included in the reports in conjunction with its [almost free] preview mode (7-day trial for $1.00) is part of Lifetime's overall effort to sell its monthly subscriptions.

28. On information and belief, Lifetime's PeopleSmart program searches for personal information of individuals, including Class Members, without their knowledge or awareness in order to create reports for the platform. Lifetime does not request or obtain consent or written authorization from those individuals before using their personal information and identities to market its paid subscription services as described herein.

29. While Lifetime offers individuals the opportunity to opt out of PeopleSmart, this is of little help since the vast majority of people are unaware that reports about them are generated by and accessible on the platform in the first place.

**Facts relating to James Bellanca:**

30. In September 2023, Bellanca discovered that his identity was accessible through PeopleSmart. Indeed, Bellanca can confirm that when his name is searched for on PeopleSmart, a message indicates that a report for him is available. However, in order to access his report, a

7

seven-day trial membership, which automatically converts to a monthly subscription, must be initiated.

31. Bellanca further confirms that after agreeing to a seven-day trial membership, he can review his report, which includes his name, current employment, email addresses, employment history, and educational background.

32. Potential customers availing themselves of Lifetime's PeopleSmart platform are able to view and, on information and belief, have viewed information on Bellanca during the seven-day trial membership.

33. Lifetime allows access to the report of Bellanca generated by its PeopleSmart platform to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into monthly subscriptions for continued access to the platform. Thus, Bellanca's name and other identifying information has been used by Lifetime to market monthly subscriptions to PeopleSmart.

34. Bellanca has no relationship with Lifetime and does not utilize or subscribe to its PeopleSmart platform.

35. Bellanca did not give consent, written or otherwise, to Lifetime to use his name, likeness, personal information, or identity for its PeopleSmart platform, or for any other reason. Nor did Bellanca provide Lifetime with written consent to use his identity for commercial purposes. Had Lifetime requested his consent, Bellanca would not have provided it.

36. Bellanca does not know how Lifetime obtained his name and identifying information for its PeopleSmart platform. On information and belief, Lifetime compiled his information from online sources, including his social media accounts and public records.

37. Lifetime did not obtain written consent from Bellanca prior to compiling his

8

personal information to create a report on him for PeopleSmart. Lifetime also did not obtain prior written permission to use his name and other identifying information to advertise paid subscriptions for PeopleSmart. On information and belief, Lifetime did not obtain written permission from any sources from which it compiled Bellanca's personal identifying information for its PeopleSmart platform.

38. Bellanca has intellectual property and privacy interests in his name, likeness, and identity recognized by Ohio statutory and common law. Bellanca has the right to exclude anyone from using his identity and persona for commercial purposes without his written permission.

39. Lifetime's use of Bellanca's identity to advertise subscriptions to PeopleSmart is misleading in that it gives the false impression that Bellanca is a willing participant in the platform, which he is not, and wants to be targeted by sales and marketing professionals, which he does not.

40. Lifetime has injured Bellanca by using his name, likeness, and persona for its own commercial purposes without compensation or permission and potentially subjecting him to harassing and uninvited marketing, recruiting, and sales communications.

**Facts relating to Michael Fink:**

41. In September 2023, Fink discovered that his identity was accessible through PeopleSmart. Indeed, Fink can confirm that when his name is searched for on PeopleSmart, a message indicates that a report for him is available. However, in order to access his report, a seven-day trial membership, which automatically converts to a monthly subscription, must be initiated.

42. Fink further confirms that after agreeing to a seven-day trial membership, he can review his report, which includes his name, current employment, email address, educational

9

background, and employment history.

43. Potential customers availing themselves of Lifetime's PeopleSmart platform are able to view and, on information and belief, have viewed information on Fink during the seven-day trial membership.

44. Lifetime allows access to the report of Fink generated by its PeopleSmart platform to have potential customers familiarize themselves with the platform in the hope that those customers are incentivized to enter into monthly subscriptions for continued access to the platform. Thus, Fink's name and other identifying information has been used by Lifetime to market monthly subscriptions to PeopleSmart.

45. Fink has no relationship with Lifetime and does not utilize or subscribe to its PeopleSmart platform.

46. Fink did not give consent, written or otherwise, to Lifetime to use his name, likeness, personal information, or identity for its PeopleSmart platform, or for any other reason. Nor did Fink provide Lifetime with written consent to use his identity for commercial purposes. Had Lifetime requested his consent, Fink would not have provided it.

47. Fink does not know how Lifetime obtained his name and identifying information for its PeopleSmart platform. On information and belief, Lifetime compiled his information from online sources, including his social media accounts and public records.

48. Lifetime did not obtain written consent from Fink prior to compiling his personal information to create a report on him for PeopleSmart. Lifetime also did not obtain prior written permission to use his name and other identifying information to advertise paid subscriptions for PeopleSmart. On information and belief, Lifetime did not obtain written permission from any sources from which it compiled Fink's personal identifying information for its PeopleSmart

10

platform.

49. Fink has intellectual property and privacy interests in his name, likeness, and identity recognized by Ohio statutory and common law. Fink has the right to exclude anyone from using his identity and persona for commercial purposes without his written permission.

50. Lifetime's use of Fink's identity to advertise subscriptions to PeopleSmart is misleading in that it gives the false impression that Fink is a willing participant in the platform, which he is not, and wants to be targeted by sales and marketing professionals, which he does not.

51. Lifetime has injured Fink by using his name, likeness, and persona for its own commercial purposes without compensation or permission and potentially subjecting him to harassing and uninvited marketing, recruiting, and sales communications

## **CLASS ALLEGATIONS**

52. Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiffs bring this class action on behalf of themselves and the following class:

> All current and former Ohio residents who are not subscribers to Lifetime's PeopleSmart platform and whose name and/or identity are or have been used to market paid subscriptions for the PeopleSmart platform.

Excluded from the class are Lifetime, its members, managers, and employees, and members of the Ohio judiciary. Plaintiffs reserve the right to amend the Class definition upon completion of class discovery when the contours and the parameters of the class become more apparent.

53. **Class Size (Fed. R. Civ. P. 23(a)(1)):** On information and belief, the members of the class are so numerous that joinder of all members is impractical. Based on the investigation by their counsel and representations made by Lifetime on its PeopleSmart website, Plaintiffs

reasonably believe that the class comprises of thousands of current and former Ohio citizens whose profiles are compiled and maintained in Lifetime's database and searchable on its PeopleSmart platform. The exact number of persons in the class can be determined from records maintained by Lifetime, but certainly exceeds 100.

54. **Commonality (Fed. R. Civ. P. 23(a)(2):** There are many questions of law and fact that exist as to Plaintiffs and members of the class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to:

(a) whether Lifetime uses Plaintiffs' and Class Members' names and identities in advertisements for its own commercial benefit;

(b) whether Lifetime obtained written consent from Plaintiffs and the Class prior to using their names and identities in advertisements promoting its PeopleSmart platform as required by OH ST § 2741.02;

(c) whether the conduct described herein constitutes a violation of ORPS and Ohio common law;

(d) whether Plaintiffs and the Class are entitled to punitive or exemplary damages for Lifetime's commercial use of their names, likenesses, and personas; and

(e) whether Plaintiffs and Class Members are entitled to declaratory, injunctive, and monetary relief as requested.

55. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiffs' claims are typical of the claims of the members of the Class. Lifetime's misuse of Plaintiffs' and Class Members' names, likenesses, and personas is the same for each.

56. **Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4)):** Plaintiffs will

fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained competent counsel experienced in class action litigation in state and federal courts nationwide and Plaintiffs have no interest adverse to any member of the Class. Plaintiffs intend to prosecute this case vigorously on behalf of themselves and the Class.

57. **Injunctive and/or Declaratory Relief (Fed. R. Civ. P. 23(b)(2)):** As demonstrated above, Lifetime has acted on grounds generally applicable to the proposed class such that final injunctive relief, as contemplated by OH ST § 2741.07(D)(3), is appropriate with respect to the Class as a whole.

58. **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)):** Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a) Proof of liability on Plaintiffs' claims will also prove liability for the claims of the Class without the need for separate or individualized proceedings;

(b) Evidence regarding defenses or any exceptions to liability that Lifetime may assert and attempt to prove will come from Lifetime's records and will not require individualized or separate inquiries or proceedings;

(c) Lifetime has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class Members;

(d) The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Lifetime economically feasible. Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system. A class action, on the other

hand, will permit a large number of claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

(e) This case is inherently manageable as a class action in that:

(i) Lifetime's records will enable Plaintiffs to readily identify class members and establish liability and damages;

(ii) Liability and damages can be established for Plaintiffs and the Class with the same common proofs;

(iii) A class action will result in an orderly and expeditious administration of claims and will foster economies of time, effort, and expense;

(iv) A class action will contribute to uniformity of decisions concerning Lifetime's practices; and

(v) As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

## COUNT I
### Violation of ORPS, Ohio Revised Code § 2741.01, *et seq.*

59. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

60. As stated, ORPS prohibits the use of an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance for commercial purposes without prior written consent. OH ST § 2741.02.

61. By engaging in the foregoing acts and omissions, Lifetime used Plaintiffs' and Class Members' names, voices, signatures, photographs, images, likenesses, and/or distinctive appearances for commercial purposes without first obtaining written consent.

62. Under ORPS, Lifetime is liable for either actual damages, including any profits derived from and attributable to the unauthorized use of an individual's persona or statutory damages in the amount of at least $2,500 and not more than $10,000, as determined in the discretion of the trier of fact. OH ST § 2741.07(A)(1)(a) and (b). Plaintiffs may also be entitled to punitive or exemplary damages and injunctive relief. OH ST § 2741.07(A)(1)(c) and (D)(3).

63. As a result of Lifetime's violations of ORPS, Plaintiffs and the Class have suffered injury to their privacy rights and economic damages. Plaintiffs and Class Members have been denied the commercial value of their names, voices, signatures, photographs, images, likenesses, and/or distinctive appearances, which Lifetime used without permission from or compensation to Plaintiffs and the Class. Plaintiffs and Class Members were denied their statutorily protected right to control how their names, voices, signatures, photographs, images, likenesses, and/or distinctive appearances are used and suffered economic damages based on that misuse.

64. Plaintiffs, on behalf of the Class, seek: statutory damages for Lifetime's violations of ORPS, or alternatively, actual damages and profits derived from the unauthorized use of Plaintiffs' and Class Members' names, voices, signatures, photographs, images, likenesses, and/or distinctive appearances; punitive or exemplary damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of reasonable attorneys' fees, court costs, and other expenses associated with this action.

## COUNT II
### Ohio Common Law Tort of Appropriation of Name or Likeness

65. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

66. Ohio common law recognizes the tort of appropriation of name or likeness. The

tort creates a cause of action for the appropriation of a name or likeness by a defendant for the defendant's own use or benefit. *James*, 167 Ohio App. 3d at 342 (citing *Zacchini*, 47 Ohio St. 2d at 229-30).

67. By engaging in the foregoing acts and omissions, Lifetime appropriated the names and likenesses of Plaintiffs and Class Members for its own commercial benefit.

68. Pursuant to Ohio common law, Plaintiffs, on behalf of themselves and the Class, seek monetary recovery in the amount of the commercial benefit Lifetime derived from its misuses of their names and likenesses as well as the entry of an injunction prohibiting further misuse.

WHEREFORE, Plaintiffs, James Bellanca and Michael Fink, individually and on behalf of all other similarly-situated individuals, demand judgment in their favor and against Defendant, The Lifetime Value Co. LLC, as follows:

A. Certifying this case as a Class Action and appointing Plaintiffs and their attorneys as class representatives and class counsel, respectively;

B. Declaring that Lifetime's actions, as described herein, violate ORPS and Ohio common law;

C. Awarding statutory damages to Plaintiffs and the Class for violating ORPS and/or actual damages and profits derived from the unauthorized use of Plaintiffs' and Class Members' names, likenesses, and personas, plus prejudgment interest;

D. Enjoining Lifetime from committing further misuse of Plaintiffs' and the Class's names, likenesses, and personas;

E. Awarding Plaintiffs reasonable attorneys' fees, court costs, and other expenses associated with this action as provide by ORPS; and

F.      Awarding such other and further relief as this Court deems appropriate and just.

          James Bellanca and Michael Fink, individually and as representatives of a class of similarly-situated persons

By:   s/ Ryan M. Kelly
        One of their attorneys

Ryan M. Kelly
ANDERSON + WANCA
3701 W. Algonquin Rd. Ste 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
rkelly@andersonwanca.com